**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| **DIANA KRADLE & JOSHUA SISLER, as co-administrators of the Estate of JACKSON KRADLE,** ) ) ) ) | |
| **Plaintiffs,** ) ) | |
| **v.** ) ) ) | **No. 3:25 C 50314** |
| **MATTHEW HERPSTREITH; AMY HUBBLE; REBECCA FREDERICK; CARROLL COUNTY, ILLINOIS; SHERIFF OF CARROLL COUNTY, ILLINOIS; SAVANNA COMMUNITY AMBULANCE ASSOCIATION; 834 S. JACKSON, LLC D/B/A THE COPPER COW; SIPPI-SIDE PUB GRILL & LIQUOR STORE, INC.; and SANDBURR RUN, LLC,** ) ) ) ) ) ) ) ) ) ) ) | **Judge Rebecca R. Pallmeyer** |
| **Defendants.** ) | |

**MEMORANDUM OPINION AND ORDER**

This case arose from a tragic motor vehicle accident. At 3:30 a.m. on July 28, 2024, a truck operated by Matthew Herpstreith, an off-duty police officer, struck teenager Jackson Kradle and severely wounded him. Kradle did not receive prompt medical attention, and later succumbed to his injuries. In this lawsuit, Kradle's estate alleges that Herpstreith and Amy Hubble, his passenger, were both intoxicated at the time of the incident, and used their connections in the Carroll County Sheriff's Office to avoid sobriety tests and legal scrutiny. The estate also alleges that, in order to cover up the incident, Hubble falsely reported that Kradle, who briefly remained alive at the scene, had died—a false report that resulted in delayed medical attention and may have contributed to his death. Plaintiffs, the co-administrators of Kradle's estate, have brought federal and state law claims against numerous defendants, two of whom—Rebecca Frederick and the Savanna Community Ambulance Association—have moved to dismiss. As explained below, Frederick's motion [81] is denied and SCAA's motion [69] is granted.

**BACKGROUND**

I. **Factual Background**

The facts as alleged in Plaintiffs' Second Amended Complaint ("SAC") [67] are presumed true at this stage. *See Ruiz v. Pritzker*, 162 F.4th 886, 889 (7th Cir. 2025). All reasonable inferences are drawn in favor of Plaintiffs. *Vesuvius USA Corp. v. Am. Com. Lines LLC*, 910 F.3d 331, 333 (7th Cir. 2018).

In the late afternoon of July 27, 2024, a party was held at Defendant Copper Cow, an event venue in Mt. Carroll, Illinois that serves alcoholic beverages. (SAC [67] ¶ 20.) The party was held to commemorate the retirement of Cindy Sisler, a dispatcher with the Carroll County Sheriff's Office. (*Id.*) Among those who attended were Matthew Herpstreith, a Deputy Sheriff, and Amy Hubble, a dispatcher at the Sheriff's Office who also worked as an Emergency Medical Technician ("EMT") with Defendant Savannah Community Ambulance Association ("SCAA"). (*Id.* ¶¶ 3–4, 22.) Numerous other employees of the Sheriff were in attendance, as was Jackson Kradle. (*Id.* ¶ 22.) Deputy Herpstreith and Ms. Hubble consumed alcohol at the party. (*Id.* ¶ 23.) At around 8:30 p.m., Herpstreith left the party, and after stopping briefly at a grocery store, drove to an afterparty where he continued to consume alcohol. (*Id.* ¶ 25.) Whether Ms. Hubble was also at the afterparty is not clear from the record, but she evidently remained out for a few more hours.

At about 11:20 p.m., Hubble asked Defendant Rebecca Frederick—a different dispatcher at the Sheriff's office who was on duty at the time—to provide her with the whereabouts of patrolling police officers. (*Id.* ¶¶ 26, 78.) These communications continued throughout the night. (*Id.* ¶ 26.) According to the complaint, Herpstreith also asked Frederick to provide him with the locations of nearby officers at various points that evening, but the complaint does not include details on the exact timing or methods of these communications. (*Id.* ¶¶ 58, 78.) Plaintiff alleges that Hubble and Herpstreith desired to know whether law enforcement officers were nearby because they were intoxicated and wanted to be sure they would not be apprehended by police

2

while driving in that condition.  (*Id.* ¶ 58.)  Plaintiff alleges, further, that at various points throughout the evening, Frederick willingly provided Hubble and Herpstreith with information about the locations of nearby officers.  (*Id.* ¶ 26, 58.)

At 11:30 p.m., Herpstreith left the afterparty by car, dropped his daughter off at home, and drove to Defendant Sandburr Run, a bar, with his wife.  (*Id.* ¶ 27.)  He continued drinking with a group of friends at the bar until around 12:30 a.m.  (*Id.* ¶ 28.)  At 12:30 a.m., he left Sandburr Run, dropped his wife off at home, and then drove to Sippi-Side Pub (another bar) to rejoin friends from the earlier parties and continue drinking.  (*Id.* ¶ 28.)  He remained at the Sippi-Side Pub until around 2:13 a.m.  (*Id.* ¶ 29.)

Hubble's whereabouts throughout this period are unclear, but by 2:13 a.m., she appears to have been at her home in Mt. Carroll with Kayla Russell.[1]  (*Id.*)  At that time, Deputy Herpstreith left the Sippi-Side Pub and drove to Hubble's house "in order to drive Kayla Russell to her home in Mt. Carroll."  (*Id.*)  During the next hour, Herpstreith and Hubble evidently dropped Russell off at her home, and then proceeded together to a "friend's home" in Mt. Carroll.  (*Id.* ¶¶ 29, 31.)  They left that home in Herpstreith's truck—with Herpstreith driving—at around 3:20 a.m., heading north on Illinois Route 78.  (*Id.* ¶¶ 31.)    It is not clear where they were going.

Kradle's whereabouts throughout the night are also unclear.  According to the SAC, he also was present at the retirement party at the Copper Cow in the early evening, and left at around 7:00 p.m. to join some friends at a nearby family cabin.  (*Id.* ¶¶ 22, 24.)  At some point, he evidently left this cabin, and returned to his home in Mt. Carroll.  (*Id.* ¶ 30.)  But at around 2:30 a.m., Kradle left his home headed to his family's cabin on foot, walking north alongside Route 78.  (*Id.* ¶ 30.)  The complaint does not explain why Kradle decided to travel to the cabin by foot; it does not allege

---

[1]        Kayla Russell is not named as a Defendant in this case, and her relationship to the Defendants is not explained in the SAC.

that he was intoxicated or otherwise impaired, and also does not state how far Kradle was planning to walk.[2]

Kradle never arrived at the cabin; at roughly 3:30 a.m., he was fatally injured when struck by the truck driven by Herpstreith, in which Hubble was a passenger. (*Id.* ¶¶ 31–32.) Immediately after the collision, Kradle was severely wounded but still breathing. (*Id.* ¶ 35.) At 3:33 a.m., Herpstreith called the sheriff's office "311" non-emergency line and reached Frederick. (*Id.* ¶ 33.) Herpstreith reported only that he had encountered a body in the road, without disclosing that he had struck Kradle or that Kradle was still alive. (*Id.*) When a body is found on a state highway, standard procedure was to send out an Illinois State Police officer. (*Id.*) Instead, however, Herpstreith asked that Frederick dispatch a specific Mt. Carroll Police Officer, Officer Scott Marth, to the scene. (*Id.* ¶¶ 33, 39.) Frederick evidently obliged; Officer Marth was immediately dispatched and arrived at the scene three minutes later, at 3:36 a.m. (*Id.* ¶ 41.) Marth did not conduct a field sobriety test or "perform any substantive investigation;" he instead reported Hubble and Herpstreith as "passerby" witnesses and allowed them to leave within minutes.[3] (*Id.* ¶ 42.) The pair left, and at 4:03 a.m., Herpstreith "appeared on video at Savannah Carwash spraying his truck to remove evidence of the fatal crash." (*Id.* ¶ 49.) At 6:41 a.m., Herpstreith wrote a "voluntary statement" to Carroll County Sheriff Ryan Kloepping; the content of this statement is not in the record. (*Id.* ¶ 51.)

At some point that morning, Kradle succumbed to his injuries without receiving medical attention. It is not clear why an ambulance was never dispatched to the scene. Plaintiff alleges

---

[2]    In briefing on a discovery-related motion, Defendants have asserted that Kradle left home because he was agitated following an argument with his girlfriend. (Opp'n to Mot. to Quash [142] at 2–4.) The complaint makes no mention of Kradle's mental state, nor is the court aware of its relevance at this stage.

[3]    Additional officers later arrived on the scene after Hubble and Herpstreith had already left. Carroll County Deputy Sheriff Joni Anderson arrived at 3:46 a.m. (SAC [67] ¶ 45.) Illinois State Troopers and an Illinois State Police Crime Scene Investigator also arrived at some point later that morning.

4

that Hubble—an off-duty EMT who was intoxicated at the time—examined Kradle and observed him breathing, but did not administer or request medical treatment.  (*Id.* ¶¶ 35–36.)  Instead, according to the complaint, she falsely "pronounced [Kradle] dead at the scene and concluded/instructed that no ambulance was needed."  (*Id.* ¶ 36.)  The complaint does not allege that Hubble informed anyone of her conclusion, however.  It may be that Hubble or Herpstreith informed Frederick during the 311 phone call that Kradle was dead, and that this assertion was the reason that Frederick did not dispatch an ambulance to the scene.

## II.    Procedural History

This lawsuit resulted.  On July 24, 2025, Diana Kradle and Joshua Sisler—the co-administrators of Jackson Kradle's estate—filed a complaint naming several individuals as Defendants.  The claims are numerous.  Against Frederick, Hubble, Herpstreith, and Marth, Plaintiff alleges civil rights claims under 42 U.S.C. § 1983—specifically, that Defendants' actions violated the Due Process Clause of the Fourteenth Amendment by creating "a dangerous situation and render[ing] citizens, including [Kradle], more vulnerable to the danger of intoxicated motorists."  (SAC [67] ¶¶ 59, 79.)  In a separate § 1983 claim, Plaintiff claims that the various employees of the Carroll County Sheriff's Office deprived Kradle of his right of access to the courts in violation of the Due Process Clause.  (*Id.* ¶ 113–133.)  Under Illinois law, Plaintiff brings (1) various negligence and wrongful death claims against Herpstreith, the Carroll County Sheriff, Hubble, and Frederick; (2) claims under the Illinois Dramshop Act against the Copper Cow, the Sippi-Side Pub, and Sandburr Runn; (3) a negligence claim against the City of Savanna and Savanna Community Ambulance Association, Hubble's employer; and (4) indemnification claims against Carroll County, Illinois, and the City of Mt. Carroll, Illinois.  Plaintiffs have since voluntarily dismissed claims against Marth [99], the City of Mt. Carroll [99], and the City of Savanna [66].

Frederick and the Savana Community Ambulance Association have both filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Those motions are now fully briefed.

**DISCUSSION**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of a complaint—not its merits. To survive, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bowlin v. Bd. of Directors, Judah Christian Sch.*, 167 F.4th 469, 474–75 (7th Cir. 2026) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this plausibility standard, the complaint must include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wickstrom v. Air Line Pilots Ass'n, Int'l*, 156 F.4th 835, 841–42 (7th Cir. 2025) (quoting *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 479–80 (7th Cir. 2024)). "Threadbare recitals" of the elements of a cause of action, supported only by "conclusory statements," are not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). In assessing the sufficiency of the complaint, the court assumes the truth of the facts alleged, and draws all reasonable inferences in the non-movant's favor. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022).

The court considers each of the pending motions in turn.

**I.     Rebecca Frederick**

As noted above, Rebecca Frederick is a dispatcher at the Carroll County Sheriff's Office who, according to Plaintiffs, provided information to Deputy Herpstreith and Ms. Hubble that enabled them to drive while intoxicated. Plaintiffs bring claims against her for deprivation of civil rights pursuant to 42 U.S.C. § 1983, in addition to several state-law wrongful death claims.

**A.     Section 1983**

Plaintiffs' federal law claim contends that in providing information concerning police whereabouts to Herpstreith and Hubble, Frederick violated the Fourteenth Amendment's Due Process Clause. Generally speaking, due process does not require state employees to protect any individual from harm. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989) ("[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."). But it does require them to refrain from

6

"needlessly create[ing] risks of harm," meaning that state actors do violate the Constitution when they unjustifiably take actions that "increase a person's risk of harm." *Paine v. Cason*, 678 F.3d 500, 510 (7th Cir. 2012). This is known as the state-created danger doctrine, and it applies whenever the state "creates or increases a danger to an individual." *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 917 (7th Cir. 2015). "When courts speak of the state's 'increasing' the danger of private violence, they mean the state did something that turned a potential danger into an actual one, rather than that it just stood by and did nothing to prevent private violence.'" *Id.* (quoting *Sandage v. Bd. of Comm'rs*, 548 F.3d 595, 600 (7th Cir. 2008)).

Plaintiffs' theory here is straightforward: that by providing information on the location of nearby police officers, Frederick enabled Herpstreith and Hubble to drive while intoxicated, thus creating the situation that led to Kradle's death. Specifically, the complaint accuses her of "create[ing] a dangerous situation" that "rendered citizens, including [Kradle], more vulnerable to the danger of intoxicated motorists." (*E.g.*, SAC [67] ¶ 99.) Frederick asks the court to dismiss this claim, arguing that complaint does not plausibly "connect the causal link between Defendant Frederick's alleged action, and the death of Jackson Kradle." (Frederick Mem. [82] at 7.)

As the court sees things, the causal link is clear enough to state a claim here. Plaintiffs have alleged (1) that Herpstreith and Hubble requested the locations of police officers from Frederick; (2) that Frederick provided that information; and (3) that Frederick continued to provide such information throughout the night. From this, it is a reasonable inference that Ms. Frederick "turned a potential danger into an actual danger" by shielding Herpstreith's impaired driving from potential detection, thus creating the dangerous conditions that caused Kradle's death. *See Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993) ("While they did not create the danger by buying [an intoxicated driver] drinks and providing him with a car, they did take action under color of state law which rendered . . . motorists . . . vulnerable to a dangerous driver.").

Frederick counters by taking issue with the complaint's lack of specificity as to the timing of the communications between Frederick and Herpstreith/Hubble. (Frederick Mem. [82] at 7–8.)

She notes that the timing of only one such communication is in the record—the 11:22 p.m. phone call—and that said phone call cannot be the proximate cause of a car accident that occurred roughly four hours later. (*Id.* at 7.) It is true that the complaint is somewhat vague in this respect: it only alleges that they "continued to communicate repeatedly thereafter . . . in the hours leading up to [Kradle's] death" (SAC [67] ¶ 26), but does not specifically allege when these subsequent communications took place, or whether any occurred in the time immediately before the collision. Still, this argument is better suited for summary judgment. Causation is a fact-dependent question and is rarely reason to dismiss a claim on the pleadings alone. *See In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 815 (N.D. Ill. 2016) (St. Eve, J.) ("[A] finding of proximate cause is generally a fact question for the jury and less amenable to resolution on a motion to dismiss." (internal quotations omitted)). The complaint alleges that Frederick, Herpstreith, and Hubble communicated throughout the night, an allegation that puts Defendants on notice of the wrongdoing that they are accused of. And the fact that a specific time is included for only one of these communications does not make Plaintiffs' underlying claim implausible.[4] Moreover, expecting Plaintiffs to provide specific times for communications that they were not privy to is an unrealistic burden at the pleading stage. The state-created danger claim can proceed.[5]

---

[4] Frederick points out that the allegation that she communicated with *Herpstreith* is included only in the "claim specific allegations" section of the complaint, while the remainder of the complaint focuses exclusively on communications with *Hubble*. She argues that "the foreseeable risk of [her] action would have been a crash where Hubble was behind the wheel, not Herpstreith." (Mem. [82] at 8.) The location of an allegation in the complaint is obviously of little consequence to the legal sufficiency of the pleading, however. Moreover, the allegation that Frederick provided information about the whereabouts of police to Hubble, a passenger in Herpstreith's car, plausibly supports a claim that Frederick's communications enabled Herpstreith to continue to drive while impaired.

[5] Plaintiffs have voluntarily agreed to dismiss their § 1983 claim premised on deprivation of access to the courts. (Opp'n [96] at 9.) Count VII is dismissed without prejudice.

**B.     Wrongful Death**

Plaintiff also brings several wrongful death claims against Frederick under Illinois tort law, each of which is also premised on Frederick's having provided information concerning police whereabouts to Herpstreith and Hubble.  Frederick responds that she is immune from tort liability pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/1-101, *et seq.*, which protects state employees from certain tort claims.  Specifically, she claims that she invokes § 2-210, which provides that

> [a] public employee acting in the scope of his employment is not liable for an injury caused by his negligent misrepresentation *or the provision of information* either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material.

745 ILCS 10/2-210 (emphasis added).  Frederick claims that the tort claims against her are premised on the "provision of information," and thus are barred by § 2-210.  (Frederick Mem. [82] at 11–12.)

The court declines to dismiss claims against Frederick on this basis.  Section 2-210 immunity is an affirmative defense.  *Van Meter v. Darien Park Dist*., 207 Ill.2d 359, 370, 278 Ill. Dec. 555, 562, 799 N.E.2d 273, 280 (Ill. 2003).  Plaintiffs are not required to plead around affirmative defenses, so dismissal is appropriate only when, from the face of the complaint, it is abundantly clear that the defendant is immune.  *Raven's Place, LLC v. City of Blue Island*, No. 23-CV-00728, 2025 WL 1412806, at *6 (N.D. Ill. May 15, 2025) ("The Tort Immunity Act is an affirmative defense that Plaintiffs did not have to plead around."); *Prokop v. Hileman*, 588 F. Supp. 3d 825, 839–40 (N.D. Ill. 2022) (same).  That is not the case here.  The statute immunizes employees against claims that they provided information leading to reputational harm—such as defamation or libel; it does not appear to bar personal injury actions.  *See Wright-Young v. Chicago State Univ*., 2019 IL App (1st) 181073 ¶ 73, 153 N.E.3d 185, 200–01 (2019) (stating that the statute applies "only to the provision of information, i.e., libel, slander, or affirmative misrepresentation").  The classic application of § 2-210 immunity is the case where a government

official releases private information about an individual, leading to a privacy tort. *E.g.*, *Masters v. Murphy*, 2020 IL App (1st) 190908 ¶¶ 14–18, 176 N.E.3d 911, 915–18 (2020) (finding corrections officer immune from tort liability resulting from allegedly false report of misconduct); *Szczesny v. Vill. of River Forest*, 20 C 5661, 2021 WL 2311972, at *7 (N.D. Ill. June 7, 2021) (finding police officers immune from defamation claim); *Plaintiff 1 v. Bd. of Educ. of Lake Forest High Sch. Dist. 115*, 2024 IL App (2d) 230173 ¶¶ 25–31, 248 N.E.3d 86, 92–95 (2024) (school officials immune from tort liability resulting from disclosure of student's private information). This case is different; it does not concern injury resulting from information disclosure, but rather bodily harm (Kradle's death) that resulted from a discrete action (driving while intoxicated) that was facilitated by the release of that information. The fact that information was tangentially involved in a tort does not necessarily put that tort within the scope of § 2-210. Frederick has not cited, and the court has not independently located, any case where § 2-210 is invoked to award immunity to a tortfeasor in a personal injury case involving physical harm.

Frederick's motion to dismiss Counts XII and XIII is denied.

## II.     Savanna Community Ambulance Association

The court turns next to Plaintiffs' claim against Savanna Community Ambulance Association ("SCAA"), the ambulance service that employed Hubble.[6] Under the doctrine of *respondeat superior*, an employer is liable for the torts of their employees when they are acting within the scope of their employment. *Hoy v. Great Lakes Retail Servs., Inc.*, 2016 IL App (1st) 150877 ¶ 24, 52 N.E.3d 386, 391 (2016). For an individual's conduct to be "within the scope of [her] employment," it must (1) be "of the kind that the employee was employed to perform"; (2) "have occurred substantially within the time and space limits authorized by the employment"; and (3) "have been motivated, at least in part, by a purpose to serve the employer." *Elston v. Cnty of*

---

[6]     Plaintiffs do not claim that SCAA is vicariously liable for any constitutional torts committed by Hubble. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021) (explaining that Section 1983 does not allow for respondeat superior liability).

*Kane*, 948 F.3d 884, 887 (7th Cir. 2020) (citing *Adames v. Sheahan*, 233 Ill.2d 276, 299, 330 Ill. Dec. 720, 733, 909 N.E.2d 742, 755 (Ill. 2009)); *see also* RESTATEMENT (SECOND) OF AGENCY § 228.

Defendants argue that Plaintiffs have not plausibly alleged that SCAA is vicariously liable for Hubble's actions, and the court agrees. No allegations suggest that in her activities on July 27 and 28, 2024, Hubble was acting within the scope of her employment. The complaint alleges that Hubble, an off-duty EMT, examined Kradle at the scene and falsely pronounced him as dead, and concludes that these circumstances are the basis for liability on the part of SCAA. But the complaint is silent as to how Hubble "pronounced" Kradle as dead, and whether that pronouncement was communicated to anyone in particular, leaving the court unable to infer that she was performing professional activities that morning. If Hubble had simply decided not to call an ambulance in order to protect herself, that would hardly qualify as a professional "pronouncement" sufficient to hold her employer liable. The fact that an off-duty EMT declined to administer or request aid does not transform that activity into a professional one.

Moreover, even if the court were to assume that Hubble falsely informed someone else (perhaps Frederick) that she was a paramedic and that Kradle was dead, it remains unclear how the ambulance company is liable. Hubble was not on duty that night; instead, she spent the evening drinking alcohol to the point of intoxication. Plaintiff has alleged that Hubble was intoxicated at the time of the accident, which could mean that she was unqualified to render any kind of professional medical opinion. More importantly, if her false "pronouncement" of Kradle as dead delayed or prevented Kradle's receipt of medical care, Hubble's acts were plainly motivated by her own self-interest—i.e., avoiding scrutiny for her actions—and not for the benefit of her employer. Courts routinely dismiss such claims, because where "the motive for the employee's tort is personal and solely for the benefit of the employee, the employer is not subject to liability." *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 467 (7th Cir. 2016) (affirming grant of summary judgment in case where the employee's "intention was to safeguard her own job"); *see also Tovias*

11

*v. JP Morgan Chase Bank, N.A.*, No. 25 CV 9560, 2026 WL 45279, at *3 (N.D. Ill. Jan. 7, 2026) (dismissing claim against employer where employee is alleged to have engaged in misconduct for his own gain); *Ferguson v. Cook Cnty., Ill.*, No. 20-CV-4046, 2021 WL 3115207, at *17 (N.D. Ill. July 22, 2021) (same). The court sees no reason to depart from these authorities here.

The court concludes that the complaint does not contain sufficient factual material to support a plausible inference that SCAA is vicariously liable for Hubble's actions. Claims against SCAA are dismissed without prejudice.

## CONCLUSION

Defendant Frederick's motion to dismiss [81] is denied. Ms. Frederick is directed to answer the complaint within 28 days. Defendant SCAA's motion to dismiss [69] is granted. All claims against SCAA are dismissed without prejudice. Plaintiffs have leave to file an amended complaint, if any, within 21 days. SCAA will respond to any amended complaint naming it 21 days after filing.

ENTER:

Dated: May 28, 2026

_____
REBECCA R. PALLMEYER
United States District Judge

12